1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN RE MAXWELL
TECHNOLOGIES, INC.,
DERIVATIVE LITIGATION,

This Document Relates to:

ALL ACTIONS

CASE NO. 13CV966 BEN (RBB)

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**

**(2) GRANTING MOTIONS TO FILE DOCUMENTS UNDER SEAL**

**(3) AWARDING ADDITIONAL LITIGATION EXPENSES**

[Docket Nos. 81, 89, 102]

The parties reached a global settlement of derivative actions both here and in state court.  The Court has already approved the settlement, entered judgment, approved an award of litigation expenses, and approved service awards for Plaintiffs Sameer Agrawal, Walter Kienzle, and Stephen Neville.  (Docket No. 100.)  This motion addresses the award of attorneys' fees, a service award for Plaintiff Evan Warsh, and additional litigation expenses. Lead Counsel Johnson & Weaver is seeking $1,297,412.25 in attorneys' fees.  Additional counsel for Plaintiffs, Harwood Feffer LLP, is seeking an additional $330,237.26 in attorneys' fees.  Defendants agree that Plaintiffs are entitled to attorneys' fees, but argue a reasonable award is between $400,000-$450,000.  The Court heard oral argument on March 16, 2015.  For the reasons outlined below, the Court approves a total of $1,086,089.25 in attorneys' fees and the additional litigation expenses requested by Harwood Feffer.

**BACKGROUND**

This shareholder derivative action brought under Federal Rule of Civil Procedure 23.1 asserted claims against the officers and directors of Maxwell Technologies, Inc. for issuing false and misleading statements regarding Maxwell's financial condition. Plaintiffs alleged Maxwell lacked adequate internal controls concerning revenue recognition. In short, Plaintiffs alleged that Maxwell was recognizing revenue when it was not collectible. This eventually resulted in a Restatement that disclosed Maxwell had overstated its revenues by $10.1 million in 2011 and $9.2 million in 2012.

Actions were filed in both state and federal court. Ultimately, the federal derivative action proceeded and the state proceedings were stayed. The parties arrived at the settlement through mediation. The settlement encompasses both the state and federal derivative actions. Notice of the settlement terms and Plaintiffs' intention to seek up to $1,500,000 in attorneys' fees was provided to shareholders with instructions on how to submit any objections. No objections were filed.[1]

## I.    Terms of the Settlement

The approved settlement consists of Reforms intended to strengthen internal controls concerning revenue recognition, financial risk, and the functioning of Maxwell's Audit Committee, and to enhance the independence and accountability of the Board. As part of the settlement, the Reforms must stay in place for at least four years. Defendants have agreed that the derivative actions were a substantial cause of the Reforms.

### A.    Internal Controls

Maxwell has implemented a formal revenue recognition policy and provided training on it. Maxwell has also implemented a deviation policy that requires approval of any sales terms that deviate from established terms and ensures these deviations are accurately reflected in financial statements. These controls must be monitored by the Audit Committee, assessed annually, and augmented as necessary.

---

[1]Objections were due by March 2, 2015 and no objections have been filed.

**B.     Board of Directors**

Two-thirds of the Board must be independent and an independent director is specifically defined in the Reforms.  The Board must have an executive session, without employee directors present, at least quarterly.  Board members must attend a nationally-recognized board training within one year.  No Board member can chair more than one standing committee.   The Governance Committee chair must communicate with the Chief Compliance Officer quarterly to assist the Chair in preparation of the agenda and governance materials.

**C.     Audit Committee**

The Audit Committee must have at least three members that meet the NASDAQ independence requirements and meet at least four times a year.  At least one member must qualify as a financial expert.  The Chair of the committee shall be elected by the independent directors of the Board with a recommendation of the Governance and Nominating Committee.  The Committee must engage in a risk review that includes new business initiatives, assessments of significant developments affecting recognized risks in established business segments, and evaluation of Maxwell's disclosure obligations.  The Committee must ensure that Maxwell maintains an internal audit department independent of the accounting department.

**D.     Employee Compliance Training**

Maxwell must implement a comprehensive compliance program covering Generally Accepted Accounting Principles (GAAP), revenue recognition, Maxwell's code of conduct, the whistle blower policy, and current training on anti-corruption. The whistle blower policy was amended to provide that all complaints will be routed to persons not employed by Maxwell.

**E.     Internal Audit Function**

The internal audit function implemented after Maxwell's Restatement must remain in place for four years.  The Internal Auditor appointed by the Board shall report to the Audit Committee quarterly and will be responsible for an Internal Audit

13cv966

1   Plan that assesses internal controls and will prepare a written report for each internal
2   audit with findings, opinions, and recommendations.

3   **F.     Executive Reports**

4        The Chief Financial Officer shall provide a report on Maxwell's financial
5   condition and prospects at each regularly-scheduled Board meeting.

6   **II.    Requested Fees**

7   **A.     Lead Counsel**

8        Lead Counsel represents that Johnson & Weaver; Faruqi & Faruqi; Hynes, Keller
9   & Hernandez; and Bottini & Bottini have devoted 1,744.40 hours to the federal and
10  state derivative actions encompassed by the settlement.  Multiplying the hours each
11  individual worked on the litigation by that individual's asserted hourly rate results in
12  a lodestar of $864,941.50.  In its Motion for Attorneys' Fees, Lead Counsel only
13  provided summaries identifying each individual, total hours worked, and that
14  individual's billing rate.  Detailed billing records were filed under seal for the Court's
15  review in support of the Reply brief.  Lead Counsel seeks a 1.5 multiplier on the
16  lodestar that would result in a requested fee award of $1,297,412.25.

17  **B.     Harwood Feffer**

18       Harwood Feffer also seeks attorneys' fees.  Harwood Feffer is identified in the
19  list of Plaintiffs' Counsel in the Settlement Stipulation at ¶ 1.16.  Harwood Feffer is
20  counsel for Plaintiff Evan Warsh, a plaintiff in one of the derivative actions in state
21  court.  Despite the inclusion of Harwood Feffer in the Settlement Stipulation, Lead
22  Counsel excluded Harwood Feffer's work on the litigation because a phone call
23  received from Warsh led Lead Counsel to believe Harwood Feffer may not have been
24  retained by Warsh to pursue the derivative litigation.  Harwood Feffer has now
25  provided a retention letter and a declaration from Warsh that explains that Harwood
26  Feffer was retained by Warsh and clarifies his call was based on his mistaken belief
27  that his counsel was not included in the settlement.
28  ///

1    Harwood Feffer represents that it has devoted 546 hours to this litigation.

2  Multiplying the hours each individual devoted to the litigation by that individual's

3  asserted hourly rate results in a lodestar of $297,330.00.  Harwood Feffer seeks

4  $330,237.26 in attorneys' fees, $5,016.85 in litigation expenses, and a $2,500 service

5  award for Warsh.

6    In total, Plaintiffs' Counsel[2] seek $1,627,649.51 in attorneys' fees.  While

7  conceding Plaintiffs are entitled to attorneys' fees, Defendants assert that an award

8  between $400,000 and $450,000 is reasonable.

9                                   **DISCUSSION**

10  **I.    Attorneys' Fees**

11    Under the substantial benefits doctrine, shareholder plaintiffs bringing derivative

12  actions are entitled to attorneys' fees because "expenses incurred by one shareholder

13  in the vindication of a corporate right of action can be spread among all shareholders

14  through an award against the corporation." *Mills v. Electric Auto-Lite Co.*, 396 U.S.

15  375, 395 (1970); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989)

16  (finding courts may award fees to "a plaintiff whose efforts result in . . . the conferring

17  of a corporate benefit.").

18    The Court agrees with Defendants that Delaware law applies to an award of

19  attorneys' fees.  In diversity actions, the state law that "govern[s] the claim[s] . . . also

20  governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.

21  2002) (citing *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995));

22  *see also Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012).[3]  However, the

23  Ninth Circuit has provided guidance to district courts concerning the calculation of

24

25    [2]The Court's reference to Plaintiffs' Counsel includes all the firms identified in
¶ 1.16 of the Settlement Stipulation, including Harwood Feffer.

26    [3]Plaintiffs' Counsel did not address Defendants' assertion that the Court should
apply Delaware law in approving the award of fees.  However, the Court notes that
27  Plaintiffs could not dispute that Delaware law applies to the claims given the
Opposition to the Individual Defendants' Motion to Dismiss sought the application of
28  Delaware law.  Additionally, the Court's analysis also conforms to the analysis applied
when federal law is at issue.

1  attorneys' fees that is not clearly limited to a particular state or federal approach.

2  "Delaware has no set method or fixed formula to assess an application for

3  attorneys' fees." *In re Golden State Bancorp Inc. S'holder Litig.*, No. CIV. A. 16175,

4  2000 WL 62964, at *3 (Del. Ch. 2000) (citing *Goodrich v. E.F. Hutton Grp. Inc.*, 681

5  A.2d 1039, 1046 (Del. 1996)).  Delaware courts consider the following factors in

6  assessing a fee award: "(1) the results accomplished for the benefit of the shareholders;

7  (2) the efforts of counsel and time spent in connection with the case; (3) the contingent

8  nature of the fee; (4) the difficulty of the litigation; and (5) the standing and ability of

9  counsel involved." *Seinfeld v. Coker*, 847 A.2d 330, 336 (Del. Ch. 2000) (citing

10  *Sugarland Indus. v. Thomas*, 420 A.2d 142 (1980)).  The Ninth Circuit considers

11  similar factors in assessing whether a positive or negative multiplier should be applied

12  when using the lodestar approach. *In re Bluetooth Headset Prods. Liab. Litig.*, 654

13  F.3d 935, 941-42 (9th Cir. 2011).  Although the lodestar is "presumptively reasonable,

14  the court may adjust it upward or downward by an appropriate positive or negative

15  multiplier reflecting a host of 'reasonableness' factors, 'including the quality of

16  representation, the benefit obtained for the class, the complexity and novelty of the

17  issues presented, and the risk of nonpayment.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*,

18  150 F.3d 1011, 1029 (9th Cir. 1998) (internal citation omitted)).

19  The analysis of the lodestar and the factors the Court must consider in assessing

20  the fee award are largely the same, although Delaware courts may take a less

21  mechanical approach to the calculation of attorneys' fees than that required by the

22  Ninth Circuit. *Padgett v. Loventhal*, 706 F.3d 1205, 1208 (9th Cir. 2013) (reiterating

23  "[w]e have long held that district courts must show their work when calculating

24  attorney's fees" and summarizing cases reversing district courts); *Seinfeld*, 847 A.2d

25  at 336 (explaining the discretion afforded to judges and summarizing the flexibility

26  allowed in consideration of the factors).

27  ///

28  ///

## A.      Lodestar

The parties appear to agree,[4] and the Court finds, that the lodestar method is more appropriate here than the percentage of recovery method as a starting point because the relief obtained, corporate governance reforms, is "not easily monetized." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941. Additionally, the lodestar calculation is also significant to Delaware's second and fifth factors — the efforts of counsel and time spent in connection with the case and the standing and ability of counsel. *See Seinfeld*, 847 A.2d at 337-38 (noting hourly rate informs second factor).

The Court arrives at the lodestar by multiplying the number of hours "reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941.

### 1.      Reasonableness of the Hours

The Court finds the hours requested are reasonable, particularly given the significant motion practice required in this court and before the state court and the substantial preparation and effort associated with the mediation and development of the Reforms. The detailed billing records submitted for the Court's review reflect that work was generally allocated in an efficient manner with minimal overlap in tasks despite multiple firms and attorneys working on the litigation.

The work done in the state and federal cases was significant for litigation that had not moved beyond the motion to dismiss stage. The complaints were very detailed, likely in an attempt to sufficiently plead demand futility — a critical step to this litigation proceeding. As addressed more below, in addition to motions to dismiss, the parties briefed motions to stay both the state and federal litigation. Distinct legal issues

---

[4]Lead Counsel requests the Court apply "the well-established lodestar method," (Reply at 2), and Defendants request the Court apply Delaware's approach that Defendants characterize as "substantially similar to the lodestar approach used by federal courts." (Opp'n at 9.)

1  among the Defendants required two separate oppositions to the Defendants' three

2  initial motions to dismiss.  The parties were in the process of briefing motions to

3  dismiss the amended complaint when a settlement was reached.

4      Defendants argue that time expended attempting to stay this case and proceed

5  in state court should be excluded.  The Court disagrees.  The settlement encompasses

6  the state derivative litigation.  The Court has no doubt that the proceedings in state

7  court and achieving a settlement of that litigation factored into the global settlement

8  achieved here.   Additionally, the Court finds nothing improper about Plaintiffs'

9  attempts to stay this case and proceed in state court early in the litigation.  The state

10  cases were filed and consolidated well before the federal action was filed and there was

11  an expectation that needed discovery might be obtained earlier in the state court.  That

12  this Court ultimately declined to stay this case because of the related securities case

13  does not warrant the exclusion of this work from the calculation.

14          **2.     Hourly Rates**

15      "Fee applicants have the burden of producing evidence that their requested fees

16  are 'in line with those prevailing in the community for similar services by lawyers of

17  reasonably comparable skill, experience and reputation.'" *Chaudhry v. City of L.A.*, 751

18  F.3d 1096, 1110 (9th Cir. 2014) (quoting *Camacho v. Brideport Fin.*, 523 F.3d 973,

19  980 (9th Cir. 2008)); *see also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th

20  Cir. 2013) ("[F]ee applicant has the burden of producing satisfactory evidence that the

21  rates he requests meet these standards.").  "The relevant community is the forum in

22  which the district court sits." *Chaudhry*, 751 F.3d at 1110 (quoting *Camacho*, 523 F.3d

23  at 980).  Delaware courts also consider the hourly rate in accessing a request for

24  attorneys' fees.  *Seinfeld*, 847 A.2d at 338 n.33 (noting that although hourly rates are

25  not typically relied on heavily in common fund cases, this is not true "in the context of

26  a *therapeutic benefit* to the corporation").

27      In addition to information submitted by Plaintiffs' Counsel concerning average

28  hourly rates, the Court considers recent district court decisions detailing approved

13cv966

1  hourly rates for attorneys and paralegals of varying levels of experience in this District.

2  *Carr v. Tadin*, 51 F. Supp. 3d 970, 978-981 (S.D. Cal. 2014) (summarizing numerous

3  cases in this district and the hourly billing rates approved); *Brighton Collectibles, Inc*

4  *v. RK Tex. Leather Mfg.*, No. 10cv419 GPC (WVG), 2014 WL 5438532, at *4-5 (S.D.

5  Cal. Oct. 24, 2014); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011).  The

6  Court also takes into consideration counsels' significant experience in this particular

7  type of litigation.  Similar to Delaware's consideration of the standing and ability of

8  counsel, the Ninth Circuit has indicated that "[w]ithin this geographic community, the

9  district court should 'tak[e] into consideration the experience, skill, and reputation of

10  the attorney [or paralegal].'"  *Gonzalez*, 729 F.3d at 1205-06 (quoting *Dang v. Cross*,

11  422 F.3d 800, 813-14 (9th Cir. 2005)).

12          The Court has considered the hourly billing rates submitted and the information

13  provided concerning the experience of the attorneys and paralegals that worked on the

14  case and makes the following adjustments to the lodestar submitted by Plaintiffs'

15  Counsel.  As to the attorneys, the Court reduces the rate for Roseler from $565 to $350

16  per hour because no information on experience was provided to the Court.  The rates

17  for some of the attorneys are on the high end of an acceptable range, but in considering

18  the years of experience in this type of litigation and positions held, the Court finds the

19  attorney hourly rates otherwise acceptable.  Of the eleven paralegals whose time has

20  been submitted, only the experience of two has been provided.  The rates sought vary

21  from $220 per hour to $350 per hour.  The Court finds that paralegal rates approved in

22  this district have generally ranged from $125 to $175, although they have been

23  approved as high as $290.  As to paralegals Bottini and Ammirati, the two paralegals

24  whose significant experience was provided, the Court finds $225 is an appropriate

25  hourly rate.  As to the other paralegals, the Court finds $125 is an appropriate hourly

26  rate.

27          The adjusted lodestar for Plaintiffs' Counsel is $1,086,089.25.

28  ///

### B.    Benefit to the Corporation

As noted above, a benefit to the corporation is a threshold inquiry to obtaining any fee award.  Additionally, "Delaware courts have traditionally considered as most important the benefit that the litigation produced in determining the appropriate amount of attorneys fees to award."  *In re Dr. Pepper/Seven Up Companies, Inc. S'holder Litig.*, Civ. Action. No. 13109, 1996 WL 74214, at *5 (Del. Ch. 1996); *see also Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 (finding benefit obtained is the foremost factor that may justify a positive or negative multiplier).

There is certainly a benefit to the Reforms sufficient to justify an award of attorneys' fees.  As summarized above, the Reforms reduce the risk of the detrimental improper revenue recognition, guard against other potential violations of GAAP, and provide greater oversight and accountability.  New internal policies will draw attention to any variation from established proper practices in revenue recognition and provide greater protection for whistle blowers.  Internal audit functions have also been increased.  Finally, changes to the Board, Audit Committee, and Board reporting provide greater Board independence and better information for the Board.

However, the settlement is not so substantial or insubstantial as to justify increasing or decreasing the lodestar.  As noted above, the Reforms have the potential to reduce the reoccurrence of the wrongdoing alleged here that could continue to harm Maxwell and its shareholders and may also reduce the likelihood of new misconduct.  But, the settlement is entirely nonmonetary, consisting entirely of corporate reforms.  This alone does not preclude an increase, but the Reforms themselves are somewhat limited.  Many of the Reforms were implemented as part of the Restatement, well before this settlement.  For example, maintaining an internal audit function.  Similarly, other Reforms were already in place.  For example, the requirement that two-thirds of the Board be independent.  As to these Reforms, the only benefit obtained in the litigation is that the Reforms must stay in place for four years.  Considering the Reforms as a whole, the Court does not find an award above $1,086,089.25 is justified.

1      **C.     Additional Factors**[5]

2           Although the benefit conferred is the most important factor in the analysis and

3    the lodestar appropriately takes into account the efforts of counsel, time spent on the

4    litigation, and standing of counsel, the Court must also consider the risk of nonpayment

5    and the difficulty of the litigation.  *See Seinfeld*, 847 A.2d at 336; *see also Bluetooth*

6    *Headset Prods. Liab. Litig.*, 654 F.3d at 941-42 (identifying "the complexity and

7    novelty of the issues presented and the risk of nonpayment" as possible justifications

8    for a positive or negative multiplier).[6]

9           There was some risk of nonpayment in this difficult litigation, particularly given

10   Plaintiffs' challenges in adequately pleading demand futility.  The Court had already

11   granted motions to dismiss on that basis and briefing had commenced on the same issue

12   as to the amended complaint.  Plaintiffs diligently sought to obtain information through

13   the state court proceedings and, as previously noted, engaged in significant motion

14   practice.  However, the $1,086,089.25 fee award appropriately accounts for this in that

15   it includes all the hours necessary to pursue this litigation.  The Court does not find the

16   difficulty of the litigation or the risk of non-payment justifies an award greater than

17   $1,086,089.25.

18          Considering all the Delaware factors as a whole with particular emphasis on the

19   benefit conferred, the Court finds an award of $1,086,089.25 in attorneys' fees is

20   appropriate.  *See Seinfeld*, 847 A.2d at 336 (listing factors to consider with particular

21   weight to benefit conferred).  Additionally, $1,086,089.25 represents an accurate

22   lodestar without application of an unjustified positive or negative multiplier.  *See In re*

23   ─────────────────

24          [5]Plaintiffs rely on the considerations applied in *Vizcaino*, 290 F.3d at 1048-52.
     However, as Defendants note, *Vizcaino* applied these factors in awarding attorneys'
25   fees under a percentage of recovery method, not the lodestar approach both parties
     request the Court apply.  *Id.* at 1047.

26          [6]Quality of representation is an additional factor that may justify a departure
     from the "presumptively reasonable" lodestar.  *In re Bluetooth Headset Prods. Liab.*
27   *Litig.*, 654 F.3d at 941.  However, as previously noted, the hourly rates approved by the
     Court are on the high side of an acceptable range.  The Court did not find the rates
28   unreasonable, but does find the lodestar adequately accounts for the quality of
     representation provided.

1  *Bluetooth Prods. Liab. Litig.*, 654 F.3d at 941-42.

2  **II.    Service Award**

3      The Court finds Plaintiff Evan Warsh is not entitled to a service award. The

4  record reflects that Warsh had little to no involvement in this litigation beyond

5  retaining counsel. A service award is not appropriate.

6  **III.    Motions to Seal**

7      Plaintiffs' Counsel have filed motions to file daily billing records under seal for

8  review by the Court. (Docket Nos. 89, 102.) Because disclosure of the very detailed

9  billing records of counsel and their activities could disclose confidential and privileged

10  information, the motions to seal are **GRANTED**.

11                          **CONCLUSION**

12      The Court approves an attorneys' fee award of $1,086,089.25 for all Plaintiffs'

13  Counsel. The Court also approves $5,016.85 in additional litigation expenses for

14  Harwood Feffer. The Court **DENIES** the request for a service award for Warsh and

15  **GRANTS** the motions to seal.

16      **IT IS SO ORDERED.**

17

18  DATED: July 13, 2015

19  _____

20  Hon. Roger T. Benitez
    United States District Judge

21

22

23

24

25

26

27

28

13cv966